IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAMANTHA WILKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-080-KEW |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket Entry #104). On March 17, 2015 at 1:45 a.m., Plaintiff Samantha Wilks ("Wilks") began her shift as the locomotive engineer operating train U-CAKAVD0-09 for the owner, Defendant BNSF Railway Company ("BNSF") hauling rock on a run from Madill, Oklahoma towards Tulsa, Oklahoma. The conductor on the run was David McKee ("McKee"). At approximately 6:08 a.m., the knuckle on the last, rear-facing locomotive, designated as BNSF 7295, broke. Wilks radioed the emergency to the dispatcher and McKee put on personal protective equipment to check the train.

At 6:13 a.m., McKee informed Wilks about the broken knuckle between the last locomotive and the first railcar. Thereafter, McKee tied down the railcar brakes to prevent the cars from rolling and instructed Wilks to pull the locomotives ahead to make the

1

required minimum 50 foot clearance.  The hand brakes on the three locomotive engines were set.  Wilks notified McKee that the train was "set and centered," which was required to make certain working between the first railcar and the last locomotive was safe.  Wilks remained on the locomotive holding a lantern for McKee below. McKee attempted to knock out the cotter pin holding the knuckle with a hammer.  McKee made several attempts to remove the cotter pin; however, with each hit of the hammer, the knuckle pin would spin making it harder for McKee to remove the cotter pin.

At 6:47 a.m., the dispatcher "toned up" wanting to know the status of the repair.  Wilks believed from her experience in working with dispatchers every day that the dispatcher's tone indicated he was "anxious" because "it's [the dispatcher's] job to get trains moving."  At 6:53 a.m., Road Foreman of Engines Bob Beals radioed to let Wilks know that he was coming to help with the cotter pin.

McKee and Wilks discussed "how [Wilks] was going to stand, how [McKee] was going to stand, what needed to be done to hold the cotter pin in place so we can beat the knuckle pin, how we were going to hold the knuckle pin to get the cotter pin out."  They decided that "[Wilks] was going to hold the top of the knuckle pin to keep it from spinning while he hit it, while he hit the cotter pin."  Wilks held the top of the knuckle pin with her gloved hand

which kept the knuckle pin still while McKee used the hammer and chisel to remove the cotter key.

After McKee hit the cotter key five or six times the metal was vibrating such that Wilks' hand was slipping, so she wanted to get a better grip. Wilks told McKee to hold on while he was in mid-swing. When McKee hit the key, Wilks' hand slipped and her back popped. Wilks stated, "Ow, that's going to hurt," and McKee asked if Wilks was all right. She said, "yes" and they repositioned. Wilks had no more contact with the knuckle after she slipped and experienced pain in her back.

At 7:30 a.m., Heath Patrick, a carman from the Mechanical Department, radioed asking where the train was located and stated he was on his way to help with the knuckle. Sometime thereafter and before either Heath Patrick or Bob Beals arrived, McKee decided that since the E type of knuckle was not working, he would install an F type knuckle. When Bob Beals arrived at 7:40 a.m., McKee had properly installed the F type knuckle. Wilks had returned to the locomotive and did not participate in the installation of the F type knuckle.

Wilks had previously been involved in a motor vehicle accident on December 5, 2014 when a transport van associated with her work was struck from behind at a stop sign. She was treated for neck and upper back pain and discharged the same day. Later, she

3

reported lower back pain.  Wilks received a settlement for the accident.

Wilks was also involved in a motor vehicle accident on August 15, 2015 when her truck struck a concrete barrier.  She reported back pain from her lower back up to her shoulder blades.

Wilks' last day of work for BNSF was March 17, 2015.  She reported her injury from the knuckle replacement on March 20, 2015. She received a letter from BNSF dated May 16, 2018 wherein her voluntary relinquishment of her position was accepted under the collective bargaining agreement, stating that her medical leave expired on February 21, 2018 and she had "not furnished any documentation to justify [her] absence since that date."

On March 15, 2018, Wilks filed the Complaint in this case alleging (1) BNSF was negligent in various specified respects in violation of the Federal Employers' Liability Act ("FELA"); and (2) BNSF violated the Federal Safety Appliance Act ("FSAA") in the use of the coupler in this case thereby subjecting it to strict liability, all resulting and causing Wilks' injuries alleged in this case.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden

of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

BNSF seeks summary judgment in several respects pertaining to the claims asserted by Wilks. Namely, BNSF contends (1) Wilks has not demonstrated a viable claim under the FSAA as the device which allegedly caused her injury was not covered by the FSAA; (2) Wilks has not proved BNSF was negligent under FELA; and (3) Wilks is limited in her recovery of damages due to her inability to claim damages attributable to two other accidents and because she voluntarily resigned her employment with BNSF by operation of the

5

collective bargaining agreement in place.  The Court will address each argument in turn.

## FSAA Claim

FSAA is considered an amendment to the FELA.  It does not create an independent cause of action, but railroad employees may recover for a violation of the FSAA under FELA.  Makovy v. Kansas City Southern Co., 339 F.Supp.3d 1242, 1245 (E.D. Okla. 2018) citing Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969).  In order to prevail on her claim under the FSAA, 49 U.S.C. §§ 20301-20306, Wilks must only prove a statutory violation and not negligence.  She "must prove that the statutory violation was a causative factor contributing in whole or in part to the accident that caused [her] injuries."  Id. citing Grogg v. Mo. Pac. R.R. Co., 841 F.2d 210, 212 (8th Cir. 1988).

BNSF attempts to draw a distinction between the cotter key on which Wilks' was working from the overall knuckle or coupler of which the cotter key is a component or associated part.  BNSF contends that the cotter key is not specifically identified under the covered safety appliance list contained at 42 U.S.C. § 20302 and, therefore, it cannot be held liable under the FSAA.

In a well-reasoned and well-written opinion from Judge Ronald White from this District, BNSF's position finds no merit.  Judge White wrote in Makovy, *supra* at 1245-46:

6

> As to statutory violation, the Supreme Court
> has held as a matter of law that the failure
> of couplers to remain coupled until released
> constitutes a violation of 49 U.S.C. §
> 20302(a)(1)(A). *See* O'Donnell v. Elgin,
> Joliet & E. Ry. Co., 338 U.S. 384, 70 S.Ct.
> 200, 94 L.Ed. 187 (1949). A broken knuckle
> causing couplers to separate thus falls within
> the Court's reasoning. *See* Kukowski v. Soo
> Line R.R. Co., 2018 WL 834235, *14 (D.Minn.
> 2018)("Under the clear language of O'Donnell,
> a knuckle which fails to remain coupled until
> released constitutes a *per se* violation of the
> FSAA").

No dispute in the facts exist that the failure of the knuckle occurred, causing the last locomotive and the first railcar to decouple. Moreover, Heath Patrick testified that the cotter key holds the pin in place which, in turn, holds the knuckle on the drawbar.[1] BNSF draws too fine a distinction between the component parts of this assembly. The fact the knuckle broke and the removal of the cotter key was required for its replacement brings any defect in these parts under the umbrella of the FSAA. This does not require the adoption of the "but for" theory of causation rejected by the United States Supreme Court in CSX Transp. Inc. v. McBride, 564 U.S. 685 (2011). Rather, a jury should be permitted to determine whether the failure of the knuckle and its component parts in violation of the FSAA caused or contributed to Wilks' injury. *See* Makovy, *supra* at 1246-47 ("The Supreme Court stated

---

[1] Patrick Depo., Wilks' Exh. No. 13, p. 23, ll. 9-25, p. 24, ll. 1-12.

that the causal link was 'hardly farfetched,' but that those courts observed that the evidence did not show mere 'but-for causation'."); *see also* <u>Richards v. Consol. Rail Corp.</u>, 330 F.3d 428 (6th Cir. 2003)("[I]f as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to a jury."). This Court cannot conclude that the replacement of the allegedly defective knuckle is an "incidental condition or situation in which the accident otherwise caused results in such injury" as urged by BNSF. The cotter key was part and parcel to the knuckle and knuckle replacement which allegedly resulted in Wilks' injury. Consequently, the matter of causation under the FSAA will be left to the deliberations of the jury empaneled at trial.

## Negligence Under the FELA

BNSF next asserts that Wilks has no evidence of negligence on its part such that she may prevail under the FELA. Wilks' FELA claim alleges that BNSF is liable under 45 U.S.C. § 51, which provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or

8

insufficiency, due to its negligence, in its
cars, engines, appliances, machinery, track,
. . . or other equipment.

45 U.S.C. § 51.

In order to prevail on her claim under the FELA, Wilks must

prove:

> (1)   the employee was injured within the scope
>       of his employment,
>
> (2)   the employment was in furtherance of the
>       employer's interstate transportation
>       business,
>
> (3)   the employer was negligent, and
>
> (4)   the employer's negligence played some
>       part in causing the injury for which the
>       employee seeks compensation under FELA.
>
> Ezell v. BNSF Ry. Co., 949 F.3d 1274, 1279-80
> (10th Cir. 2020) citing Van Gorder v. Grand
> Trunk W. R.R., 509 F.3d 265, 269 (6th Cir.
> 2007) and Volner v. Union Pac. R.R., 509 F.
> App'x 706, 708 (10th Cir. 2013)
> (unpublished)(adopting Van Gorder's
> elements).

An "essential ingredient" of an FELA claim is whether the

harm was reasonably foreseeable by the employer.   Gallick v.

Baltimore & Ohio Railroad Co., 372 U.S. 108, 117 (1963)(citation

omitted).   BNSF "may not be held liable if it had no reasonable

way of knowing that the hazard, which caused [Wilks'] injury,

existed."   Brown v. CSX Transportation, Inc., 18 F.3d 245, 249

(4th Cir. 1994)(citations omitted); see also, Williams v. National

9

R.R. Passenger Corp., 161 F.3d 1059, 1062 (7th Cir. 1998).

In demonstrating causation, the United States Supreme Court has found a "relaxed standard of causation applies to FELA." CSX Transp. Inc. v. McBride, 564 U.S. at 691-92.  Under FELA's relaxed standard of causation, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id. at 692.

BNSF first contends that it had no knowledge of the broken or defective knuckle and, therefore, could not be held liable in negligence.  Wilks offers the testimony of her expert witness, Larry Hanke.  After inspecting the knuckle, Mr. Hanke determined that the defect in the knuckle was visible and could have been discovered prior to it breaking with a proper inspection.[2]  This evidence is sufficient to bring the question of the reasonable foreseeability of the defect before the trier of fact.

Additionally, evidence has been presented that Wilks and McKee felt at least some time pressure from the dispatcher and that Wilks may have not been adequately trained in the preferred method for removal of the cotter key utilizing the appropriate

---

[2]  Hanke Depo., Wilks Exh. No. 6, p. 38, l. 8 through p. 40, l. 24; p. 56, ll. 5-13; p. 62, ll. 17-20.

10

equipment.  Some evidence has also been provided that Wilks and McKee should have had additional equipment to assist their removal of the cotter key and replacement of the knuckle.  To that end, the question of whether BNSF was negligent in failing to provide a safe work environment should be presented to the jury for adjudication.

### Limitation on Damages

BNSF asserts that Wilks' damages are limited because she suffered injuries in two separate motor vehicle accidents – one before the subject incident and one after.  Clearly, a FELA claim must be brought within three years of the day the claim accrues. 45 U.S.C. § 56; Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1235 (10th Cir. 2001).  Although she does not appear to contest the matter, Wilks cannot recover damages for injuries which are attributable to either the 2014 motor vehicle accident.  She also cannot recover in this action for any damages arising from the 2018 accident since it has not been plead.

BNSF also contends Wilks cannot recover for damages accruing after August of 2018 when Wilks was deemed to voluntarily quit her employment with BNSF.  BNSF asserts that the collective bargaining agreement between the union that represents Wilks and other railroad employees provides that member will provide periodic documentation to justify their continued leave of absence and that

11

the failure to provide such documentation results in the automatic voluntary resignation of employment.

While disputing the evidence BNSF relies upon to assert she voluntarily resigned under the terms of the collective bargaining agreement, Wilks ultimately contends it does not affect her ability to recover damages for a loss of earning capacity as a result of BNSF's violation of the FSAA and its negligence under FELA. Nothing in the record before this Court indicates Wilks could still perform her engineer job with BNSF. Moreover, she does not seek reinstatement as a part of her relief in this action. Consequently, the circumstances of her resignation or termination are irrelevant to the trial of this case. An element of recoverable damages in a FELA case includes a loss of future wages or reduction in earning capacity. Compton v. BNSF Ry. Co., 2009 WL 1765968, at *1 (N.D. Okla. June 16, 2009). Whether Wilks was voluntarily terminated by operation of the bargaining agreement has no bearing on the recoverability of these damages, should Wilks adequately prove her entitlement to such damages.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Docket Entry #104) is hereby **DENIED,** except to the extent that Wilks cannot claim damages from injuries attributable to the 2014 or 2018 motor vehicle accidents.

IT IS SO ORDERED this 17th day of June, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE